Scott H. Zwillinger (019645)
**GOLDMAN & ZWILLINGER PLLC**
7047 E. Greenway Parkway, Suite 150
Scottsdale, Arizona 85254
(480) 626-8483
(480) 383-6224 (Fax)
E-mail:  docket@gzlawoffice.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Christine Rode,<br><br>       Plaintiff,<br><br>v.<br><br>Ron Credio, *et al.*,<br><br>       Defendants. | No. CV-14-02354-PHX-SRB<br><br>**PLAINTIFF'S RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS**<br><br>**Oral Argument Scheduled for February 2, 2015 at 10:30 a.m.**<br><br>(Before the Hon. Susan R. Bolton) |

Defendants Credio, Lao, Hayes. Robles and Wiggin's (collectively the "Correction Defendants") Motion to Dismiss (the "Motion") ignores the detailed allegations of Plaintiff's amended complaint and the standards applicable to Rule 12(b)(6) motions.  The factual allegations of Plaintiffs amended complaint provides the Correction Defendants with fair notice of the claims against them and demonstrates Plaintiff's right to relief pursuant to 42 U.S.C. § 1983 and the Ninth Circuits decisions in the matter titled *L.W. v. Grubb*, *infra*. As such, the Motion should be denied.

Plaintiff's Response in opposition the Motion is supported by the following memorandum of points and authorities, the first amended complaint, and the Court's entire file in this matter.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. THE CORRECTION DEFENDANTS' FAILURE TO AMELIORATE DANGEROUS CONDITIONS THAT THEY CREATED AND WHICH WERE KNOWN AND OBVIOUS PROVIDED THE OPPORTUNITY FOR DEFENDANT HARVEY TO RAPE AND STAB PLAINTIFF.

Plaintiff Christine Rode is employed by the Arizona Department of Corrections ("ADC") as a teacher. ¶ 1.[1] On January 30, 2014, Christine was scheduled to administer a pre-GED High School Equivalency test to six or seven inmates housed in the Arizona State Prison Complex-Eyman, Meadows Unit. ¶ 21. On that day, however, Christine was placed in a dangerous situation that, but for the acts and omissions of the Correction Defendants, would not have existed and to which she would not have been subjected. ¶ 96. The dangerous conditions that existed were obvious and known by the Correction Defendants. ¶ 97. Yet, the Correction Defendants failed to take the necessary steps to address the dangerous conditions they created and to which Christine was exposed. ¶¶ 99. As a result, Christine, after being left alone in a classroom with the inmates, was raped and stabbed by Defendant Harvey, who less than a year earlier had been sentenced to nearly thirty years in prison as a result of a daytime home invasion where he raped and savagely beat a woman in front of her young child. ¶¶ 19; 43-58. As a result, Christine sustained traumatic physical and emotional injuries. ¶ 101.

More specifically, the Meadows Unit is a medium custody unit that houses sex-offenders, many of whom have been convicted of violent sexual assaults, and other special needs prisoners, including those who are mentally ill, disabled, and in need of protective custody. ¶ 18. Christine is a teacher and not a trained corrections officer, and thus she has little training in self-defense, the use of force, the proper manner and method to control the movements of inmates, or other matters vital to controlling inmates and keeping herself safe. ¶ 22. Unlike trained corrections officers, Christine was not provided and did not have access to

---

[1] The paragraph references herein refer to Plaintiff's First Amended Complaint (Doc. 9). "On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Grismore v. Capital One F.S.B.*, 2007 WL 841513, at *3 (D. Ariz. 2007); *citing Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

2

personal protection equipment such as pepper spray or a body alarm. ¶ 23. Indeed, Christine and other non-corrections employees are forbidden from bringing such personal protection devices into prisons. ¶ 24. Instead, no different than other civilian employees of the ADC, Christine relied on the Correction Defendants and other ADC corrections staff, to provide a secure environment and take the necessary and appropriate steps to protect her and keep her safe. ¶ 25. That civilian employees of the ADC, such as Christine, relied on ADC corrections staff, including the Correction Defendants, to take necessary and appropriate steps to provide a secure environment and protect her and keep her safe was well known and expected by the Correction Defendants. ¶26.

Typically, Christine provided instruction in the Meadow Unit's visitation room. ¶ 28. That day, however, she was instructed to utilize classroom two in the Meadows Unit ("Classroom Two"). ¶ 29. There are significant obvious and well-known security differences between the visitation room and Classroom Two.  The visitation room is located near the Meadow Unit's main control room, has multiple large windows for corrections officers to observe the inmates during the class, was monitored by security cameras and – most importantly – is an area where corrections staff is routinely present. ¶ 28. Conversely, Classroom Two is not monitored by security cameras, does not have large windows providing a view of the activities within, and is in a remote location that is not monitored by corrections staff and thus lacks any officer presence whatsoever. ¶ 30. After she was assigned to Classroom Two, the Correction Defendants failed to take reasonable and appropriate measures to provide Christine with a secure environment and keep her safe that took into account the significant differences between the visitation room and Classroom Two. ¶ 31. In-fact, little more was done then provide Christine with a radio and instruct her to call correctional officers if an inmate "acted up." ¶ 32.

Each of the Correctional Defendants, however, had duties and responsibilities that required them to do more.[2]  Defendants Warden Credio and Deputy Warden Lao and chief of

---

[2] As Christine will demonstrate in this action, the Fourteenth Amendment also required more from defendants.

3

security Capt. Hayes were responsible for the operation of the Meadows Unit such that a safe and secure working environment is provided. ¶ ¶ 2, 3 & 4. In order to do this, Warden Credio, Deputy Warden Lao, and Capt. Hayes were responsible for, without limitation, implementing an effective security plan for the Meadows Unit, properly and sufficiently staffing the Meadows Unit, appropriately assigning officers within the Meadows Unit, and appropriately managing the inmate population within the Meadows Unit ¶ 38. Defendant Lt. Robles was the day shift commander for the Meadows Unit on January 30, 2014. As shift commander, Defendant Robles was responsible for the security in the Meadows Unit, including ensuring that the assigned corrections staff were assigned appropriately assigned and thereafter performed their duties in such a manner as to provide a safe and secure working environment. ¶¶ 5 & 38.  Defendants Credio, Lao, Hayes and Robles, however, failed to perform their duties in a proper manner.  As a result, after being moved from the visitation room and during the approximate one and a half-hour Christine administered the pre-GED exam in Classroom Two, not a single corrections officer entered the classroom to perform a security check on the inmates and the welfare of Christine and there was absolutely no officer presence in or around Classroom Two. ¶¶ 36, 38.  In-fact, not a single officer ever so much as radioed Christine to ask if she was ok or in need of assistance.  ¶37.

Moreover, Defendants Credio, Lao, Hayes and Robles' failure to properly implement an effective security plan for the Meadows Unit, properly and sufficiently staffing the Meadows Unit, appropriately assign officers within the Meadows Unit, and appropriately manage the inmate population resulted in Christine being required to supervise inmate movements. ¶¶ 43-46. Specifically, on January 30th, Christine was required to escort and supervise inmates while they used a locked bathroom outside Classroom Two. ¶¶ 43-46. It is improper and dangerous for untrained civilian employees to supervise inmate movements. ¶ 43-45.  Yet, as a result of the failures of Defendants Credio, Lao, Hayes and Robles, corrections staff routinely did not supervise inmate movements. ¶44. On January 30th, Defendant Harvey took advantage of this, and began his attack when Christine went to escort Harvey to the locked bathroom outside the classroom. ¶ 46-48.

The lack of any officer presence for one and half hours in Classroom Two and the reliance on untrained civilian employees to supervise inmate movements created an unsecure and dangerous environment and was directly attributable to Defendants Credio, Lao, Hayes and Robles individual and collective failures to, without limitation, implement an effective security plan for the Meadows Unit, properly and sufficiently staff the Meadows Unit, appropriately assign officers within the Meadows Unit, ensure officers were performing their assigned duties and appropriately managing the inmate population within the Meadows Unit. ¶¶ 38, 39, & 96. The unsecure and dangerous environment that was created was obvious and known by the Correction Defendants. ¶ 97. Moreover, Defendants Credio, Lao, Hayes, and Robles had a duty and obligation to protect Christine and knew that Christine and other civilian ADC employees relied on them for protection.  ¶ 98. Yet, the Correction Defendants did nothing to ameliorate the danger to which Christine was exposed or to protect her and therefore were deliberately indifferent. ¶¶ 99, 100.

Defendant Wiggin is an ADC employee whose duties and responsibilities include classifying inmates for the purposes of assigning them to appropriate security levels within the ADC. ¶ 6. The improper and dangerous decision she made to house Harvey in the medium custody Meadows Unit directly contributed to the dangerous environment that existed in Classroom Two and Harvey's opportunity to rape and assault Christine. ¶ 71. Defendant Harvey was originally assigned to a close custody unit, which is a higher level of security than medium-custody. ¶¶ 72, 73. ADC employees recommended that Defendant Harvey remain in a close custody unit. ¶¶ 75. However, Defendant Wiggin rejected the recommendations and ordered that he Harvey be placed in the lower custody unit. ¶¶ 76, 79. There was, however, no sound basis to reject the recommendation that Defendant Harvey be kept in close custody. Indeed, it was inappropriate and dangerous to reject the recommendation to maintain Defendant Harvey in close custody and assign him to a lower level medium-custody unit. ¶ 77, 78.  Placing Defendant Harvey in a lower level of custody created a dangerous condition that otherwise would not have existed and which was obvious and known by Defendant Wiggin. ¶¶96. This is because of Harvey's age, the length of his sentence, his date of admission to the

1  ADC, the violent nature of his crime, his mental-health needs, and his violations of prison rules
2  and regulations in the short time he had been in custody. ¶ 78. Yet, Defendant Wiggin did
3  nothing to address the dangerous situation she created. ¶ 99. As such, she too was deliberately
4  indifferent. ¶¶ 99, 100. As a direct and proximate result of the Correction Defendants'
5  deliberate indifference, Plaintiff has sustained traumatic physical and emotional injuries that
6  she struggles with to this day. ¶ 101.

## II.   PLAINTIFF'S COMPLAINT STATES A CLAIM.

### A.   Plaintiff's Complaint Provides Defendants With Sufficient Notice of Her Claims And Therefore Defendants' Motion Must Be Denied.

"A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim." *Scovil v. Medtronic, Inc.*, 995 F. Supp. 2d 1082, 1088 (D. Ariz. 2014) citing *Conservation Force v. Salazar,* 646 F.3d 1240, 1242 (9th Cir. 2011). Here, Defendants do not dispute that Plaintiff's Amended Complaint advances legally cognizable claims. Indeed, Defendants concede throughout their motion that Plaintiff's claims are authorized by the Ninth Circuit's decisions in *L.W. v. Grubbs I & II*, *infra*.

Having conceded that Christine's complaint advances a cognizable legal theory, Defendants have a substantial burden to deprive her of the right to proceed to discovery because of claimed deficiencies in the Amended Complaint's factual allegations. This is because, "[t]he theory of Rule 8(a), and of the federal rules in general, is notice pleading….[thus] under the federal rules a complaint is required ***only*** to give the notice of the claim such that the opposing party may defend himself or herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011)(emphasis added). Accordingly, a complaint "does not need detailed factual allegations" but must only plead "[f]actual allegations…enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To do this, a complaint requires "only enough facts to state a claim for relief that is plausible on its face" *Bell Atlantic Corp,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id*. Significantly, "Rule 8(a) '*does not impose a probability requirement at the pleading stage;* it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Starr,* at 1217, *quoting Twombly*, 550 US at 556. Simply put, "[a] complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rabang v. I.N.S.*, 35 F.3d 1449, 1451 (9th Cir. 1994). As the Ninth Circuit has instructed:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable.

*Starr*, 652 F.3d at 1216-17.

Little more than a month ago, the Supreme Court reinforced what is required of a plaintiff at the complaint stage when it unanimously and summarily reversed the Fifth Circuit:

> Our decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), are not in point, for they concern the *factual* allegations a complaint must contain to survive a motion to dismiss. A plaintiff, they instruct, must plead facts sufficient to show that her claim has substantive plausibility. Petitioners' complaint was not deficient in that regard. Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim.

*Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346-47 (2014)

Christine's Complaint is no different in that it "simply, concisely, and directly" sets forth the events that, taken as true, demonstrate that Defendants are liable and she is entitled to damages. This is confirmed by even a superficial review of the Amended Complaint's factual allegations which easily gives Defendants "fair notice" that they must defend themselves against claims that they are responsible for Christine's injuries because they individually and

1  collectively created dangerous conditions in the Meadows Unit that were known and obvious,
2  yet failed to take steps to address those conditions and protect Christine.[3] That the Correction
3  Defendants have "fair notice" of her claims, is further confirmed by their motion to dismiss
4  which recites at length the legal standards applicable to Christine's claims and contains factual
5  snippets of the manner in which the Correction Defendants apparently will defend this matter.
6  For example, Defendants contest that Christine was not placed "in any type of situation that
7  she would not normally face" and claim that they are not liable because supposedly "[t]he risk
8  of harm, including assault, always exist[s] at a prison like Eyman."  Motion at p. 5, ll. 8-14.
9  Defendants also criticize Plaintiff for supposedly attempting "to recast absolutely routine
10 prison events." Motion, at p. 6, l. 9. Of course, at best, these contentions are nothing more than
11 the type of "alternative explanations" that the Ninth Circuit in *Starr* found insufficient to
12 support a motion to dismiss. Moreover, as set forth above, the Complaint contradicts each of
13 Defendants' proffered "alternative explanations" and specifically contradicts that the situation
14 Christine found herself in on January 30th was "normal" and nothing but "routine prison
15 events." To the contrary, the Complaint alleges in substantial detail (and Plaintiff will prove)
16 that there is nothing "normal" or "routine" about a teacher being left alone in a room for nearly
17 ninety minutes with six or seven sex offenders and special needs inmates, including at least
18 two who were convicted of violent sexual crimes.

19    All this aside, however, Defendants would obviously not be in a position to enunciate
20 such legally and factually specific positions if they lacked "fair notice" of the basis for
21 Plaintiff's claims. Accordingly, as the Correction Defendants have received "fair notice" of the

---

[3] To the extent the Correction Defendants claim that Plaintiff has failed to allege specific acts taken by each individual Defendant, it should be noted that the Ninth Circuit stated that a "plaintiff 'does not need to show with great specificity how each defendant contributed to the violation of his constitutional rights.  Rather, he must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law.'" *al-Kidd v. Ashcroft*, 580 F.3d 949, 974 (9th Cir. 2009). Of course, as set forth above, Christine has alleged the acts of each Defendant in this action that created the danger to which she was needlessly exposed.

8

claims such that they can defend themselves effectively, their motion to dismiss should be denied.

**B.     The Decisions in *L.W. v. Grubbs*, *infra*, confirm that Plaintiff's Complaint States a Claim.**

Defendants' Motion also fails because it is based on a flawed premise: that the amended complaint fails to set forth sufficient factual allegations to sustain a § 1983 claim for defendants participation in creating a known and obvious dangerous condition to which Plaintiff was subjected. As Defendants concede throughout the Motion, such a claim has been approved by the Ninth Circuit in *L.W. v Grubbs*, 974 F.2d 119, 123 (9th Cir. 1992):

> L.W. has alleged that she was deprived of her liberty because Defendants, acting in their capacity as state correctional officers, affirmatively created a significant risk of harm to her, and did so with a sufficiently culpable mental state. Accordingly, we hold that L.W. has stated a claim under section 1983 for violation of her due process rights.

As the Ninth Circuit explained in *Grubbs II*, the "sufficiently culpable mental state" needed to sustain such a claim is deliberate indifference. *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th. Cir. 1996). In evaluating the complaint in *Grubbs*, the Ninth Circuit held that "the facts alleged in the complaint, if true, demonstrated deliberate indifference, on the part of the state officials, in creating the danger." *L.W. II*, 92 F.3d at 895, *citing L.W. I*, 974 F.2d at 122-23. Under factually similar circumstances, Christine has alleged that her due process rights were violated when the defendants acting under color of law created a risk of danger to which she otherwise would not have been exposed and failed to take the steps necessary to ameliorate the danger which proximately caused her to sustain traumatic injuries.

Yet, Defendants claim that dismissal is warranted because supposedly: "there is no allegation that any of the defendants were aware of the likelihood of harm to the Plaintiff, much less that any of the defendants were 'aware of facts from which the inference of harm could be drawn.'" Motion at p. 4, ll. 22-26 citing *Farmer v. Brennan*, 511 US 825, 835 (1994). Defendants are wrong. As detailed above, the amended complaint sets forth in substantial detail the relevant actions and inactions of the Correction Defendants that created dangerous

9

conditions to which Plaintiff would not have otherwise been subjected. ¶ 96. Quite plainly, the amended complaint then alleges:

- that "the danger of said conditions was obvious and known by the Correction Defendants." ¶ 97;
- that the "Correction Defendants had a duty and obligation to protect Plaintiff and Plaintiff relied on the Correction Defendants to protect her" ¶ 98;
- "Yet, the Correction Defendants did nothing to ameliorate the danger…" ¶ 99; and
- that as a result the Correction Defendants were deliberately indifferent "in failing to take any steps to ameliorate the danger or otherwise protect Plaintiff…" ¶ 100.[4]

The Court should therefore reject Defendants claim that the amended complaint fails to allege the requisite "culpable mental state."

Indeed, Defendants' argument in this regard is also somewhat misleading because they claim that "Plaintiff must *show* that the defendants had 'actual knowledge of, or willfully ignored, impending harm,'" Motion at p. 6, ll. 7-8 (emphasis added). However, as the Supreme Court has made clear, "[w]hether a prison official had the requisite knowledge of a substantial risk is a *question of fact* subject to demonstration in the usual ways, including inference from circumstantial evidence and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)(emphasis added); *See also L.W. II*, 92 F. 3d, at 900 ("Deliberate indifference to a known, or so obvious as to imply knowledge of, danger, by a supervisor who participated in creating the danger, is enough").  Thus, even if Plaintiff had not alleged that the Correction Defendants knew of the dangerous conditions (which she does), the allegation that the risks the Correction Defendants created were "obvious" in and of themselves demonstrate deliberate difference at the pleading stage.  Of course, Defendants arguments in this regard appear to be more in line with a motion for summary judgment. Prior to discovery, plaintiff need not meet

---

[4] The amended complaint further alleges that "[a]s a direct and proximate result of the Correction Defendants' deliberate indifference," Plaintiff was injured (¶ 101) and that as a result " the Correction Defendants violated the due process rights guaranteed her by the Fourteenth Amendment of the United States Constitution. (¶ 102)"

any evidentiary "showing." It is sufficient, that she has alleged facts that, taken as true, demonstrate that the Correction Defendants were deliberately indifferent.

In-fact, portions of Defendants' motion appear to be nothing more than a thinly veiled motion for summary judgment. For example, Defendants also claim that "[t]here is no reasonable way that assigning Harvey to a medium custody unit by itself could be construed as 'deliberately indifferent' in creating a dangerous situation that allowed for the assault of Plaintiff on January 30, 2014." P. 5, l. 26- P. 6, .l 1. Yet, that is ***precisely*** what the amended complaint alleges because Defendant Wiggin directed that Harvey be placed in a lower level of custody. ¶¶ 75 & 76. In doing so, she ignored the recommendations of other ADC staff and critical factors including Harvey's age, the length of his sentence, his date of admission to the ADC, the violent nature of his crime, his mental-health needs, and his violations of prison rules and regulations in the short time he had been in custody. ¶ 78. As such, Defendants belief as to what is "reasonable" is irrelevant in evaluating their Motion to Dismiss.

Similarly, the Correction Defendants claim dismissal is appropriate because "Plaintiff's Amended Complaint does not even specifically allege that any of the individual defendants were responsible for assigning Plaintiff to utilize classroom 2 in the Meadows Unit." Motion at p. 5, ll. 8-14. And somewhat bizarrely that "Plaintiff's Amended Complaint does not allege that any of the individual defendants were responsible for Plaintiff herself allowing Defendant Harvey to remain behind, leaving her alone with Plaintiff." Motion at P 5, ll. 17-21. Yet, these too appear to be arguments more suited for summary judgment or, perhaps more accurately, for a jury. This is because they are either contrary to allegations in the Amended Complaint, based on evidence that currently is only in Defendants' possession or represent Defendants view of what may be contested issues at trial. For example, precisely how and who determined that Christine was to use Classroom Two on January 30th is currently known only to Defendants. What is known, and what is alleged in the Amended Complaint, is that there were significant security differences between Classroom Two and the visitation room where Christine typically worked. ¶¶ 28, 30. These differences were obvious and well known. ¶ 97. Yet, the Correction Defendants failed to take the steps necessary to establish a safe environment in Classroom Two

and as a result the opportunity for Harvey to rape and stab Christine was created when she was left alone to fend for herself for an extended period of time. ¶¶ 30, 32, 35-39. Similarly, Defendants' claim that Christine was responsible for being left alone with Harvey because she "allow[ed] Defendant Harvey to remain behind," is contrary to the allegations of the Complaint and ignores the allegations that inmate movements must be controlled by trained corrections staff only and not untrained civilians. ¶17, 43-45. Simply put, these types of arguments, like much of the Correction Defendants' Motion, have no place prior to discovery and cannot support the dismissal of Plaintiff's complaint.

### III. ALTERNATIVELY, PLAINTIFF MUST BE AFFORDED AN OPPORTUNITY TO AMEND HER COMPLAINT.

Of course, if the Court determines that there are factual deficiencies in the Amended Complaint, Plaintiff requests to an opportunity to address those deficiencies via an amended complaint. This is particularly true because Defendants have conceded that Plaintiff's Amended Complaint is based on a legally cognizable theory and has challenged only the factual basis of Christine's complaint.

### IV. CONCLUSION.

Based on the foregoing, and on the allegations contained in the amended complaint, the Correction Defendants' Motion to Dismiss should be denied.

**RESPECTFULLY SUBMITTED** this 5th day of January, 2015.

                      **GOLDMAN & ZWILLINGER PLLC**

                By:   /s/ Scott Zwillinger
                       Scott H. Zwillinger
                       7047 E. Greenway Parkway, Suite 150
                       Scottsdale, Arizona 85254
                       Attorneys for the Plaintiff

**CERTIFICATE OF SERVICE**

On January 5, 2015, I electronically filed this document through the CM/ECF system, which will send a notice of electronic filing to, and also served via mail, the following listed parties:

Jonathan Weisbard
Arizona Attorney General's Office
1275 W Washington Street
Phoenix, Arizona 85007-2926
Attorneys for State Defendants

Jacob Harvey
Inmate 279133
ASPC - Eyman
P.O. Box 3500
Florence, AZ 85132-3500
*Pro Per* Defendant

J. Scott Conlon
Renaud Cook Drury Mesaros, PA
One North Central, Suite 900
Phoenix, Arizona 85004-4417
Attorneys for Corizon Defendants


By:  /s/ Cristie Seaton